# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311<br>Honorable Sean F. Cox |
| IN RE EXHAUST SYSTEMS<br>IN RE ELECTRONIC BRAKING SYSTEMS<br>IN RE HYDRAULIC BRAKING SYSTEMS | Case No. 2:16-cv-03703, 2:16-cv-11082<br>Case No. 2:21-cv-04403, 2:21-cv-11989<br><br>Case No. 2:21-cv-04503, 2:21-cv-11993 |
| THIS DOCUMENT RELATES TO:<br>End-Payor Actions | |

# ORDER GRANTING
# FINAL APPROVAL OF THE ROUND 5 SETTLEMENTS

End-Payor Plaintiffs ("EPPs") have moved the Court for final approval of settlements reached with certain defendants described below. Pursuant to notice given to the Settlement Classes in accordance with the Court's orders, a hearing was held on EPPs' motion on January 12, 2023, and at the conclusion of the hearing, based on the showing made by EPPs and the entire record of these proceedings, and in light of the fact that no objections were made to the settlements, the Court granted EPPs' motion.[1] For the reasons stated by the Court at the hearing and as provided in this Order, the Court finds the settlements provide an excellent result for each of the Settlement Classes in light of, among other factors, the substantial risks of continued litigation and that each of the settlements is fair, reasonable, and adequate to the respective Settlement Classes. Although described collectively in this Order for purposes of administrative convenience, each settlement is independent of the others and this Order applies separately to each of the settlements. This Order will accordingly be separately entered as an order in each specific case docket to which it applies.

## I.    BACKGROUND

These actions arise from alleged conspiracies amongst the automotive industry's largest manufacturers, marketers, and sellers of numerous of automotive

---

[1] Defined terms not otherwise defined herein shall have the meanings ascribed to those terms as noted in End-Payor Plaintiffs' Motion for Orders Granting Final Approval of the Round 5 Settlements and the papers associated with that motion.

parts to fix the prices, rig bids, and allocate the markets and customers in the United States for their products. EPPs assert claims for relief under the Sherman Antitrust Act, 15 U.S.C. § 1, and various state antitrust, unjust enrichment, and consumer protection laws.

The Court preliminarily approved each of the settlements (referred to herein as the "Round 5 Settlements") in separate orders of the Court. The Round 5 Settlements were reached with three defendants and their affiliates (collectively, the "Settling Defendants") named in three cases involving different automotive parts (the "Settled Parts"). The Settling Defendants are: (1) Bosal Industries Georgia, Inc. and Bosal USA, Inc. (together, "Bosal"); (2) Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch"); and (3) ZF TRW Automotive Holdings Corp, ZF Friedrichshafen AG, and Lucas Automotive GmbH (collectively, "TRW").

These settlements collectively make available $3,154,000 in cash for the benefit of the Settlement Classes. Those classes are comprised of persons and entities who purchased or leased a new vehicle[2] in the United States not for resale that included at least one of the Settled Parts, or indirectly purchased one or more of the Settled Parts as a replacement part, which were manufactured or sold by a

---

[2] In general, the vehicles in question include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles").

Defendant, any current or former parent, subsidiary, or affiliate of a Defendant or any named co-conspirator of a Defendant. Further, each Settling Defendant must provide cooperation to the EPPs. The Round 5 Settlements also provide that Bosch and TRW will not engage for a period of two years in certain specified conduct that would violate the antitrust laws involving the automotive parts that are at issue in the Actions associated with those settlements.

## A.    Settlement Amounts

The following chart summarizes the Round 5 Settlements, and identifies the respective  Round 5 Settling Defendants, Settled Parts cases, and settlement amounts.

| Auto Parts Round 5 Settlements and Settlement Funds | | |
|---|---|---|
| Round 5 Settling Defendant | Automotive Parts Case | Settlement Fund |
| Bosal | Exhaust Systems | $152,000.00 |
| Bosch | Hydraulic Braking Systems | $128,112.22 |
| | Electronic Braking Systems | $2,113,887.78 |
| TRW | Hydraulic Braking Systems | $760,000.00 |
| | Total | $3,154,000.00 |

As part of the settlement negotiations, Settlement Class Counsel considered several factors, including the evidence regarding Settling Defendants' alleged conduct and, where available, the estimated dollar amount of commerce affected by that conduct; information from parties and non-parties, and their consulting experts concerning impact, the overcharges, and passthrough rates; their knowledge about potential recoveries that might be available in this litigation obtained through many years of experience in litigating and settling antitrust class  actions; and academic

studies on these subjects.

**B.     Cooperation and Other Terms**

Under the terms of the settlements, Bosch and TRW must provide cooperation to the EPPs as reasonably necessary for the prosecution of the action and Bosal must provide cooperation in identifying vehicles that contain Exhaust Systems sold by Bosal.

In exchange for the settlement payments and cooperation, EPPs and members of the respective Settlement Classes will release the "Released Claims" against the Round 5 Settling Defendants.

**C.     Notice Plan**

In these cases, the Round 5 Settlements provide meaningful cash benefits to consumers and other class members, who purchased or leased new Vehicles, not for resale, containing the automotive parts subject to the settlements, or who indirectly purchased one or more of those automotive parts as a replacement part. The Round 5 Settlements identify those jurisdictions that allow EPPs, who are indirect purchasers, to seek money damages or restitution:  Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia,

and Wisconsin (the "EPP States"). EPPs, through EPPs' class action notice provider, Kinsella Media, LLC ("Kinsella"), implemented a class notice program utilizing paid and earned media. *See, e.g.*, Declaration of Cristen Stephansky on Implementation of the Round 5 Notice Program ("Stephansky Decl."), submitted herewith. The Round 5 Notice Program included direct notice as well as paid and earned media, including online media efforts through banner advertisements on outlets like Facebook/Instagram. *Id.* ¶¶ 3-7. The earned media component of this notice program included a press release to supplement the paid media program. Information about the Settlements appeared in media outlets, such as AP News, MarketWatch, and Markets Insider. *Id.* ¶ 6. Kinsella also registered sponsored keywords and phrases (*e.g.*, "Auto Parts Settlement") with all major search engines, including Google AdWords, Bing Microsoft Advertising, and their search partners. *Id.* ¶ 7. Members of the Settlement Classes are able to contact a toll-free helpline and receive important updates and information from the settlement website, www.AutoPartsClass.com. *Id.* ¶ 8. The website provides answers to frequently asked questions, deadlines, a list of the Settling Defendants, court filings, and the long form notice. The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week. Declaration of Brian A. Pinkerton Regarding Dissemination of Round 5 Notice and Settlement Administration ¶ 4.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 23(e) governs class action settlements, and under the rule, "The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Moreover, when a proposed settlement binds class members, the court may approve it "on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv- 14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-1952, 2011 WL 717519, at *8 (E. D. Mich. Feb. 22, 2011). Approval involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc*., 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig*., No. 2:08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). In the third step, the court assesses whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921-23).

This determination requires consideration of "whether the interests of the class

as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick,* 2010 WL 4136958, at \*14-15.

In exercising its discretion, the Court gives deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014). Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) (citation omitted), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Because the purpose of settlement is to avoid the determination of contested issues, the approval process is not simply an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at \*15 (citation omitted). A court considering whether to approve a settlement should be mindful that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 2:05-cv-

74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted).

## III.   ANALYSIS

At the outset, the Court observes that courts within the Sixth Circuit "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice*, 2011 WL 717519, at *7; *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA*, 238 F.R.D. at 594 (internal quotation marks and citations omitted).

### A.   Factors Governing Final Approval

The Round 5 Settlements meet the criteria required for final approval under Rule 23. They provide meaningful benefits and were reached as a result of arm's-length negotiations conducted in good faith by experienced counsel for EPPs and Settling Defendants, who were knowledgeable about EPPs' claims and the defenses that might be asserted to those claims. The settlements reflect a reasonable compromise in light of the liability, damages, and uncertainties of continued litigation

facing both EPPs and Settling Defendants.

Here, the Court has considered a number of factors in reaching its conclusion that the settlements should be granted final approval, including those factors required by Rule 23(e)(2): (1) that the class representatives and class counsel have adequately represented the classes; (2) that the proposals were negotiated at arm's-length; (3) that the relief provided for the classes are adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the classes, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (v) that the proposal treats class members equitably relative to each other. The Court finds all of these factors satisfied and specifically notes that no agreements were made in connection with this proposal that affect the fairness of the settlement. *Gutierrez-Bejar v. SOS Int'l, LLC*, Case No. LA CV16-09000 JAK, 2019 WL 5683901, at *7 (C.D. Cal. Nov. 1, 2019) (noting that the amendment of Rule 23 was designed to "focus the court and the lawyers on the core concerns of the fairness inquiry" (citing the Advisory Committee Comments to 2018 Amendments to Rule 23)); *see also* MANUAL FOR COMPLEX LITIGATION § 21.631 (4th ed. 2004) ("The spirit of Rule 23(e)(2) is to compel identification of any agreement or understanding that might have affected the interests of class members by altering what they may be

receiving or foregoing.").

The Court has also considered the following other factors: the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; the complexity, expense, and likely duration of further litigation; the opinions of class counsel and class representatives; and the amount of discovery engaged in by the parties; the reaction of absent class members; the risk of fraud or collusion; and the public interest. *In re Packaged Ice*, 2011 WL 717519, at *8. No one factor is determinative; each is discussed below, under *Likelihood of Success on the Merits*.

1.    *Likelihood of Success on the Merits*

Courts assess class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Int'l Union*, 2006 WL 1984363, at *21. When the interests of the class as a whole are better served by settlement, the standard is met. *Sheick*, 2010 WL 4136958, at *16 (citing IUE-CWA, 238 F.R.D. at 595).

Unlike previous rounds of settlements in this case, none of the Round 5 Settling Defendants were subject to U.S. criminal proceedings in connection with the conduct alleged by EPPs in their complaints in these Actions. While EPPs believe

that they will prevail in the respective Actions, the Court recognizes that EPPs'
success is not assured. EPPs must prove several critical issues, including, but not
limited to, (1) liability; (2) the amount of any overcharges resulting from the alleged
conspiracies; (3) the nature and impact of the economic and business relationships
between parties occupying different places in the chain of distribution and the
relationship of defendants' sales to original equipment manufacturers ("OEMs"),
OEMs' sales to automobile dealers, and dealers' automobile sales to end-users;
(4) the pass-through of overcharges; and (5) class-wide impact and the standing
to sue of indirect purchasers. The resolution of these issues will turn in large measure
on a battle of experts—at great cost and at great risk to the class members' chances
of success. EPPs must show they suffered damages as a result of the Round 5 Settling
Defendants' conduct, and given the nature of the automobile industry, the damages
methodologies advanced by the parties are expected to vary greatly. Moreover,
absent the Round 5 Settlements, the Round 5 Settling Defendants would oppose
EPPs' motions for class certification, move for summary judgment on numerous
issues, and raise defenses to EPPs' claims at trial, should the actions proceed to those
stages of the Actions. In sum, EPPs face significant challenges to proving class-wide
impact and the amount of damages they sustained. Bosal has vigorously and ably
defended itself in the *Exhaust Systems* Action and TRW and Bosch have done the
same in prior actions filed by EPPs against them in the *Auto Parts Litigation*. There

11

is no question that the Round 5 Settling Defendants will continue to vigorously and ably defend themselves in the event the Court were to reject the settlements. These settlements avoid the many risks of further litigation and ensure recovery for members of the Settlement Classes. Finally, with the exception of Bosal, the Round 5 Settling Defendants have agreed not to engage for a period of two years in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue. Therefore, the Court finds that after weighing the benefits of the settlements against the risks of continued litigation, the scale tilts heavily toward final approval.

2.   *Complexity, Expense, and Likely Duration of Continued litigation*

A settlement "should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem*, 218 F.R.D. at 523 (citation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

The Court agrees with Settlement Class Counsel's assessment that antitrust class actions of the size and the magnitude of this very complicated litigation make this among the most difficult and complex actions to prosecute. Settlement Class Counsel represent nearly sixty class representatives, pursuing claims under federal law and the laws of thirty states and the District of Columbia on behalf of classes of consumers and businesses that purchased or leased new Vehicles containing certain automotive parts and replacement parts manufactured by the defendants. Given the

well-known difficulty and protracted nature of antitrust cases in general, the Court finds that any final adjudicated recovery for the EPPs would almost certainly be many years away. Further, continued litigation would be expensive, time consuming, complex, and likely involve conflicting testimony from multiple expert witnesses. The Court is cognizant that complex antitrust litigation of this scope and magnitude has many inherent risks that the settlements eliminate. Here, EPPs have negotiated meaningful recoveries that eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the Settlement Classes. An analysis of this factor, therefore, overwhelmingly supports final approval of the settlements.

3.    *Judgment of Experienced Counsel*

In deciding whether a proposed settlement warrants approval, the courts consider "the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsels' judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18).

Courts presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *In re Packaged Ice*, 2011 WL 717519, at *12; *Sheick*, 2010 WL 4136958,

at *19-20. Here, the parties have been engaged in adversarial and protracted litigation and discovery. The negotiations leading to the settlements were conducted entirely at arm's-length and the agreements were reached only after many months of hard bargaining. The settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.  In this litigation, the settlements were reached by experienced counsel, with decades of experience, after arm's-length negotiations. Settlement Class Counsel have stated that they believe that the settlements each provide an excellent result for the respective Settlement Classes given the circumstances of each Settling Defendant's conduct and potential liability. Settlement Class Counsel thoroughly investigated the legal and factual issues regarding EPPs' claims and discovery has been extensive. *See, e.g.*, Joint Decl. of William V. Reiss, Adam J. Zapala, and Marc M. Seltzer, ¶ 14. The information revealed in the discovery process is useful to all the subsequently filed cases, and the records demonstrate that the parties have thoroughly explored the strength and weaknesses of the claims asserted by EPPs and the expected defenses to those claims. *See Sheick*, 2010 WL 4136958, at *19. The Court finds that the judgment of experienced counsel strongly supports final approval of the Round 5 Settlements.

4.    *Discovery*

Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline required to satisfy this factor.

14

*Packaged Ice*, 2010 WL 3070161, at *5-6; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[F]ormal discovery [is not] a necessary ticket to the bargaining table."). The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *3 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)). The progress in discovery varies by each case. In all cases, however, Settlement Class Counsel have had access to informal discovery. The Court is satisfied that they had sufficient information to reach these settlements.

5.     *Reaction of Absent Class Members*

The deadline for class members to object to the settlements and exclude themselves from the proposed Settlement Classes was December 20, 2022. As of that date, there were no objections to the settlements and no requests for exclusion from the Settlement Classes. The reaction of the members of the Settlement Classes to the settlements strongly favors approval of the settlements.

6.     *Public Interest*

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quotation omitted). In light of the conduct at issue, there is no countervailing public interest that provides a reason to disapprove the settlements.

15

*Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval. In addition to addressing the merits of the proposed settlements, the Court must determine that the requirements for class certification under Rule 23(a) and (b) are met. In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the settlements. It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Int'l Union*, 2006 WL 1984363, at *3, *18; *In re Cardizem*, 218 F.R.D. at 516-19. The settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

## B.    The Settlement Classes Satisfy Federal Rule of Civil Procedure 23(a)

To certify a class, Rule 23(a) and one subsection of Rule 23(b) must be satisfied. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 850-51 (6th Cir. 2013). Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The Court finds that each factor is met for the reasons summarized below.

1.   *Numerosity*

Class certification under Rule 23(a)(1) is appropriate where a class contains

so many members that joinder of all would be "impracticable." Here, the Settlement

Classes include millions of end-payor consumers and businesses, geographically

dispersed throughout the United States. The number and the geographical

distribution throughout the United States makes joinder impracticable. Therefore,

this factor is satisfied.

2.   *Commonality*

Next, a class action must implicate "questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2). "A certifiable class claim must arise out of the same

legal or remedial theory," *Patterson v. General Motors Corp.*, 631 F.2d 476, 481

(7th Cir. 1980) (citation omitted), which can be satisfied if the class members'

claims share "[a] common nucleus of operative fact," that is, some "common

question. . . at the heart of th[e] case[.]" *Rosario v. Livaditis*, 963 F.2d 1013, 1018

(7th Cir.1992) (citation omitted).

Antitrust price-fixing conspiracy cases, by their nature, deal with common

legal and factual questions about the existence, scope, and effect of the alleged

conspiracy. These cases are no different. For example, an issue common to each of

the Settlement Classes is whether the Round 5 Settling Defendants engaged in a

combination and conspiracy among themselves to fix, raise, maintain, or stabilize the

17

prices of the automotive parts at issue in each of the cases. The Court finds that the commonality requirement is met here.

3.     *Typicality*

To satisfy the third prerequisite to class certification, "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). A proposed class representative can satisfy this prerequisite if his or her claim arises "from the same event or practice or course of conduct that gives rise to the claims of other class members." *Beattie v. Century Tel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007). Here, typicality is satisfied because EPPs' injuries arise from the same wrong that allegedly injured each of the Settlement Classes as a whole. Each member of a Settlement Class was a victim of the same conspiracy alleged in the applicable class complaint.

4.     *Adequacy of Representation*

To satisfy the fourth prerequisite for class-action status, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This two-pronged inquiry requires the Court to assess "the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; [and] the other relates to the adequacy of class counsel's

representation." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. at 154, 168 (S. D. Ind. 2009) (citation omitted).

The class representatives share the same interests as other class members and will fairly and adequately protect the interests of the classes. In addition, Settlement Class Counsel are qualified, experienced and able to conduct the litigation. They have vigorously prosecuted these cases and have fairly and adequately represented each of the Settlement Classes. Accordingly, the Court finds that the named plaintiffs are adequate class representatives and that their counsel, Cotchett Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P., should be appointed to represent the Settlement Classes pursuant to Rule 23(g).

## C.    The Settlement Classes Satisfy Rule 23(b)(3)

Because EPPs meet the requirements of Rule 23(a), the Court turns to the additional requirement of Rule 23(b)(3)—that class plaintiffs demonstrate that common questions predominate over questions affecting only individual members and that class resolution is superior to other methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615. Horizontal price-fixing cases are well-suited for class certification because proof of a conspiracy presents a common, predominating question, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008), that forms the basis from which all proposed Settlement Class members' alleged injuries arise. The antitrust claims alleged herein involve the

existence of shared issues related to liability, the scope of the conspiracy, and impact. Common issues predominate over any individual questions. Notably, the alleged anticompetitive conduct at issue in these cases is not dependent on the separate conduct of the individual Settlement Class members. Finally, a class action is the superior method to adjudicate these claims. The interest of Settlement Class members in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Therefore, for purposes of these Settlements, the Court finds that the prerequisites for a class action pursuant to Rule 23 have been met as to each of the Settlement Classes.

## IV.    CONCLUSION

For the reasons stated above, the Court hereby **CERTIFIES** the Settlement Classes for EPPs. The Court's certification of the Settlement Classes as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12- md-02311. No party may cite or refer to the Court's approval of any Settlement Class as persuasive or binding authority in support of any motion to certify any class.

**IT IS HEREBY FURTHER ORDERED** that the terms of the parties' Settlement Agreements for the Settlements are hereby incorporated as Orders of this Court.

**IT IS HEREBY FURTHER ORDERED** that Cotchett, Pitre & McCarthy, L.L.P., Robins Kaplan LLP, and Susman Godfrey L.L.P. are appointed Settlement Class Counsel.

Finally, the Court **GRANTS** final approval of each of the Settlements.

**IT IS SO ORDERED.**

Dated:  February 6, 2023                                    s/Sean F. Cox
                                                                              Sean F. Cox
                                                                              U. S. District Judge